UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN MICHAEL BOYD,

    Petitioner,                            Case No. 04-CV-74462-DT
                                             HONORABLE AVERN COHN
v.

KURT JONES,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Kevin Michael Boyd (Petitioner) is a state inmate at the Handlon Correctional Facility in Ionia, Michigan, where he is serving a sentence of life imprisonment for first-degree murder, Mich. Comp. Laws § 750.316; and life imprisonment for conspiracy to commit first-degree murder, Mich. Comp. Laws § 750.157(a). Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that the claims are procedurally defaulted or lack merit. For the reasons which follow, the petition will be denied.

### II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals. The Michigan

Court of Appeals affirmed petitioner's conviction, but remanded the case to the trial court to re-sentence petitioner as a juvenile, rather than as an adult. *People v. Boyd,* 197876 (Mich.Ct.App. June 5, 1998). The Michigan Court of Appeals granted the prosecutor's motion for rehearing and amended its opinion by finding that the trial court did not abuse its discretion in sentencing petitioner as an adult. *People v. Boyd,* 197876 (Mich.Ct.App. October 6, 1998). Petitioner then sought leave to appeal with the Michigan Supreme Court, which was denied. *People v. Boyd,* 461 Mich. 899 (1999).

Petitioner then filed a habeas action with the federal district court, which was dismissed without prejudice on Petitioner's motion. *Boyd v. Jones,* Case No. 00-74509 (E.D. Mich. Oct. 24, 2001).

Petitioner subsequently filed a post-conviction motion for relief from judgment with the trial court under M.C.R. 6.500, *et. seq.* The trial court denied the motion, finding petitioner's claims to be without merit. *People v. Boyd,* No. 95-137251-FC (Oakland County Circuit Court, Oct. 27, 2003). The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied petitioner's application for leave to appeal. *People v. Boyd,* No. 252111 (Mich.Ct.App. March 22, 2004); *lv. den.* 471 Mich. 898 (2004).

Petitioner has now filed an application for writ of habeas corpus, seeking relief on the following grounds:

> I. Trial counsel was ineffective for failing to conduct proper pre-trial investigations because of his failure to secure proper documentation an[d] transcripts from previous records for impeachment purposes. Trial counsel's inactions violated Petitioner's right to effective assistance of counsel.
>
> B. Trial counsel was ineffective for failing to investigate and formulate a plausible trial strategy prior to trial.
>
> C. Trial counsel was ineffective for failing to investigate and research the

2

legal criteria and standard to be employed regarding sentencing petitioner as a juvenile, for failing to discuss with petitioner and consider requesting a speedy trial in order to preserve the petitioner's best possible chance of being sentenced as a juvenile.

D. Trial counsel was ineffective for failing to move for mistrial after the prosecution elicited the petitioner's co-defendant's trial strategy during cross-examination.

E. The cumulative effect of counsel's errors rendered him constitutionally ineffective.

II. The prosecutor's use of perjured testimony violated the Petitioner's federally guaranteed constitutional due process rights.

B. The prosecution's failure to disclose the notes for the Petitioner's admissions violated the motion for discovery by the defense pursuant to Michigan Court Rule 6.201, which violated Petitioner's right to confrontation.

III. Appellate counsel was ineffective for his failure to investigate the previous testimony of fifteen prosecution witnesses, because of his failure to investigate the newly discovered evidence the Petitioner told him about and for ignoring significant and obvious issues.

IV. Petitioner's trial was unconstitutionally tainted due to the cumulative effect of all the errors combined.

### III.  Facts

The material facts leading to petitioner's conviction as gleaned from the record follow.

Petitioner and his mother, Lynn Boyd, were convicted in separate jury trials of murdering petitioner's father, Kevin E. Boyd, in Lake Orion, Michigan in the evening or early morning hours of August 5-6, 1994.

On December 18, 1994, the Oakland County Sheriff's Department received a call from Lynn Boyd, in which she told the police she was responsible for the victim's murder. Lynn Boyd again implicated herself in the murder of her ex-husband in an interview with

the police later that day. Petitioner was arrested the same day for his father's murder.

The victim owned two businesses, Lake Orion Rental and Parties-To-Go. The victim was living with petitioner on August 5, 1994, the night of the murder. The victim owned several guns, including a .44 caliber gun. The evidence established that petitioner took this .44 caliber gun from his father's house at the time of the murder.

Jason Rumball, an employee at Parties-To-Go, testified that he was with petitioner on August 6, 1994. Petitioner did not appear to be very upset about his father's murder. Instead, petitioner told Rumball that day he did not know what he was going to do because he had to run two million-dollar businesses.

Lake Orion Police Chief James Leach testified that he went to Lake Orion Rental on August 6, 1994, to speak with petitioner. Petitioner acted unconcerned. Petitioner told Leach to look for guns that were in his father's apartment, even though Leach never told petitioner that any guns were missing. Petitioner informed Leach he spent the night of the murder at his girlfriend's house, because he had a fight with his father. Petitioner also told Leach that he did not have the key to his father's apartment, therefore, he had to use his driver's license to get into the apartment. Petitioner did have his car key.

Donald Lucarelli testified that he was an employee and a friend of the victim. On the morning that the victim's body was discovered, petitioner drove to Lake Orion Rental looking for his dad. Petitioner told Lucarelli he was going to the victim's apartment to find him. Lucarelli said that he would accompany him, but petitioner left in a hurry. Lucarelli indicated that petitioner did not have his apartment key on his key ring that was in the ignition of his car. Lucarelli later received a call from the victim's apartment manager, asking him to come to the apartment to calm petitioner. Lucarelli picked up petitioner and

4

drove him back to the shop. Lucarelli testified that the victim had black t-shirts made up four or five years earlier with the logo, "For evictions, call 1-800-HISTORY. " The victim had one of these shirts made for petitioner.

Police did not notice any forced entry at the victim's apartment. Although the victim's apartment had been ransacked, petitioner's bedroom had not been touched, nor had any items of value been taken from petitioner's bedroom.

Judith Kaminski had been the victim's girlfriend. On August 5, 1994, petitioner called her on the telephone and asked if she was going out with his dad that night. Kaminski told petitioner that she was going home to pack because she was leaving the next morning for Toronto. Petitioner then asked Kaminski what his father was going to do that evening. Kaminski thought it was unusual that petitioner had called to ask about her plans for the evening, because he had never done that before.

Yvonne Brown testified that between 12:30 a.m. and 1:00 a.m. on August 6, 1994, she was at a traffic light at the corner of Atwater and M-24 when she observed a white Ford Thunderbird with a license plate containing the letters "FNJ". Brown saw a male and a female inside the car. Brown identified the driver as a young Caucasian male, but could not otherwise identify him.

Douglas Toland lived at the same apartment complex as the victim. At approximately 2:45 a.m. on August 6, 1994, he saw a "young kid" sitting in a white Cougar or Thunderbird in the apartment parking lot. Toland could not identify the person.

Andrea Linton testified that petitioner was her ex-boyfriend. On August 5, 1994, Defendant drove to her house in a white Ford Thunderbird. Later that evening, petitioner drove her and her sister to Burger King. Lynn Boyd and her friend, Julie Grain, were also

5

at Burger King. While at the Burger King, petitioner got into his mother's car. Julie Grain left Lynn Boyd's car and went inside the Burger King. Petitioner subsequently went into the restaurant, and Lynn left. Petitioner drove Andrea and her sister home, and Andrea went to bed at approximately 12:00 a.m. Petitioner was supposed to be sleeping on the couch in the living room. The next morning when Andrea woke up, she saw petitioner, who was acting nervous. Petitioner could not find his key chain, but he had his keys the night before when they went to Burger King. Two weeks after the murder, Andrea found petitioner's keys underneath the front seat of his car. These keys had not been under the seat when the car was searched by the police on August 7, 1994.

In an initial taped statement to the police, petitioner said that his mother told him that day that she was going to turn herself into the police, after telling him that she had killed the victim with the help of her girlfriend, Julie Grain. In a subsequent non-taped interview with Lieutenant Kucyk, petitioner admitted that he assisted his mother and Julie Grain to plan the murder, by providing his mother with the keys to his father's apartment, and by discussing various ways to kill his father. In a third statement, which was taped, petitioner told Detective Harvey that he and his mother planned on killing the victim. Petitioner told Harvey that Lynn Boyd struck the victim with the baseball bat. When the victim stood up, petitioner stabbed him with a knife. Petitioner admitted he took the .44 caliber gun from the victim's house and kept it at his house.

Kenneth Kezeli, a professional auctioneer, testified that he inventoried and sold the contents of Lake Orion Rental. On or about March 28, 1995, Kezeli went into the store to disconnect an air compressor. When the air compressor was moved, a knife, which was rolled up in a shirt, fell out underneath the machine. The t-shirt that the knife was wrapped

6

in was a custom designed t-shirt ordered by the victim.

Detective Patrick Miles testified that he was the officer- in-charge of the case. The white Ford Thunderbird driven by petitioner had license plate number FNJ 142. The registered owner of the car was the victim. The car was inventoried on August 7, 1994, but no keys were found underneath the front of the car seat. When Miles interviewed petitioner on August 6, 1994, petitioner told him the keys were at his girlfriend's trailer.

## IV. Analysis

### A. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

7

incorrectly." *Id.* at 411.

## B.  The ineffective assistance of counsel claims.

The court will consolidate petitioner's first and third claims, which allege ineffective assistance of trial and appellate counsel, for the purpose of judicial clarity. [1]

1. *Standard of Review*

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.  The *Strickland* standard applies as well to claims of

---

[1] Respondent argues that petitioner's first and second claims are procedurally defaulted because petitioner failed to raise the claims on direct review of his convictions, and when he raised it on state collateral review, the state appellate courts rejected the claim pursuant to Michigan Court Rule 6.508(D).  Respondent correctly notes that, in *Simpson v. Jones*, 238 F. 3d 399, 407-08 (6th Cir. 2000), the Court of Appeals for the Sixth Circuit held that the Michigan Supreme Court's reliance on Rule 6.508(D) was sufficient for a federal habeas court to conclude that the decision rested on an adequate and independent state procedural bar.  More recently, however, the Sixth Circuit held that a claim is not procedurally defaulted where the Michigan Supreme Court relies upon Rule 6.508(D) without a clear and express invocation of a procedural bar and where the only state court to provide a reasoned opinion adjudicated the petitioner's claim on the merits.  *See Abela v. Martin*, 380 F. 3d 915, 921-24 (6th Cir. 2004).  Although the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's first and second claims on the basis of Michigan Court Rule 6.508(D), the trial court determined that petitioner's claims had no merit.  The trial court made no mention of Rule 6.508(D)(3) when denying Petitioner's motion for relief from judgment.  The Court therefore concludes that Petitioner's claims are not procedurally defaulted.

ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

    2. *Individual Claims*

    A. Failure to impeach Yvonne Brown.

Petitioner first contends that trial counsel was ineffective for failing to impeach Yvonne Brown with testimony from Lynn Boyd's trial. At Lynn Boyd's trial, Brown testified that she could not actually tell whether the male that she saw in the white Thunderbird was black or white, whereas at petitioner's trial, Brown testified that the driver of this vehicle was a Caucasian male.

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Here, defense counsel questioned Brown extensively about how her trial testimony differed extensively from what she had originally told the police. (Tr. 05/16/1996, pp. 239-250). Brown, in fact, admitted on cross-examination that the only description that she gave to the police involved the driver's gender. (*Id.* at pp. 246-47). On further questioning, Brown conceded that she merely assumed that the occupants of the vehicle were a man and a woman. (*Id.* at pp. 249-50). Counsel therefore adequately impeached Brown's testimony concerning her description of the occupants of the car.

    B. Failure to develop a plausible trial strategy.

Petitioner next contends that counsel was ineffective for calling petitioner's mother

9

and co-defendant, Lynn Boyd, to testify that petitioner was not involved in the victim's murder and that she and Jule Grain were solely involved. Petitioner claims that this was ineffective, because it allowed the prosecutor to cross-examine Lynn Boyd about the fact that her trial counsel's strategy at her trial had been to blame the murder on petitioner. It also allowed the prosecution to call Lieutenant Kucyk to testify in rebuttal that Lynn Boyd told him the day after her arrest that petitioner was, in fact, involved in the murder.

Defense counsel was not ineffective in calling petitioner's mother, his accomplice in this case, to testify that petitioner had no involvement in the victim's murder, even though this testimony opened the door for the admission of Lynn Boyd's statement to the police and questions about her trial counsel's trial strategy. *See United States v. Montana*, 199 F. 3d 647, 649-50 (7th Cir. 1999). In light of the extensive direct and circumstantial evidence against petitioner, calling petitioner's accomplice in an attempt to exonerate him was not an unreasonable tactical choice, particularly in light of the extensive evidence against him. *Id.*

C. Failure to move for a mistrial.

As a related claim, petitioner claims that trial counsel was ineffective for failing to move for a mistrial after the prosecutor attempted to elicit testimony from Lynn Boyd that her trial strategy had been to blame the murder on petitioner. Defense counsel objected to this line of questioning. The trial court sustained the objection and gave a cautionary instruction to the jurors to ignore the prosecutor's question. The trial court later rejected petitioner's ineffective assistance of counsel claim by ruling that its cautionary instruction cured any error from the prosecutor's questions.

Petitioner is not entitled to habeas relief on his claim that counsel was ineffective

for failing to request a mistrial, where any request for a mistrial would have probably been futile and unnecessary, in light of the trial court's forceful instruction to the jury to disregard the question. *See Morales v. Russo,* 401 F. Supp. 2d 170, 180-81 (D. Mass. 2005).

> D. Failure to move for a speedy trial to increase petitioner's chances of being sentenced as a juvenile, rather than as an adult.

Petitioner next contends that counsel was ineffective in failing to move for a speedy trial and that this failure caused petitioner to be sentenced as an adult, rather than as a juvenile.

In rejecting petitioner's speedy trial claim on post-conviction review, the trial court noted that the delays in this case were intended to assure that petitioner's constitutional rights were protected. The trial court indicated that it had ordered a forensic evaluation of petitioner on his mental competency to stand trial, on criminal responsibility, and on diminished capacity. The forensic report was admitted eleven months later. Petitioner then moved for an independent forensic examination, which was granted. A *Walker* hearing was conducted to determine the admissibility of petitioner's confession. This hearing spanned five months. The court also ordered the appointment of a private investigator for petitioner. Both petitioner and his mother moved for separate trials. The trial court denied the claim, because petitioner's actions caused the delay. *People v. Boyd,* No. 95-137251-FC, Slip. Op. at * 6.

To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

11

A state court's factual findings as to the cause of pre-trial delay are entitled to the presumption of correctness in federal habeas corpus proceedings involving a speedy trial claim, unless the petitioner can offer clear and convincing evidence to the contrary. *See Wilson v. Mitchell,* 250 F. 3d 388, 394-95 (6th Cir. 2001). Here, petitioner offers no evidence to rebut the trial court's factual findings concerning the reasons for the delays.

Where a criminal defendant's mental competency is appropriately in question, any delay in trial during which the defendant is sent to a hospital or psychiatric facility for an evaluation or an opinion as to his competency is not part of any unreasonable delay and does not violate the right to a speedy trial, because such an evaluation is as much for the defendant's protection as for the prosecution's. *See Hodges v. United States,* 408 F. 2d 543, 548 (8th Cir. 1969); *See also Ricon v. Garrison,* 517 F. 2d 628, 632 (4th Cir. 1975)(courts are reluctant to find constitutional infirmity in long delays in bringing accused to trial where delay results from a concern by trial court over mental competency of accused to stand trial). Any delays caused by sending petitioner for an evaluation for his competency to stand trial, as well as for an evaluation for his criminal responsibility and diminished capacity, did not violate his speedy trial rights. Likewise, any delays caused by petitioner's filing of his various pre-trial motions is attributable to the defense, for purposes of a speedy trial analysis. *See Norris v. Schotten,* 146 F. 3d 314, 327 (6th Cir. 1998). Finally, the need to conduct an evidentiary hearing on petitioner's motion to suppress is also a delay that would be attributable to petitioner. *See United States v. Kaylor,* 877 F. 2d 658, 663 (8th Cir. 1989).

If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance. *Boyd v. Hawk*, 965 F. Supp.

12

443, 450 (S.D.N.Y. 1997). In light of the fact that the same trial court which would have heard his speedy trial motion rejected petitioner's speedy trial claim on post-conviction review, petitioner is unable to show that he was prejudiced by counsel's failure to file such a pre-trial motion.

 E. Cumulative errors.

 Petitioner next claims that the cumulative nature of the errors deprived him of the effective assistance of trial counsel. Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or were of slight importance, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000).

 F. Ineffective assistance of appellate counsel.

 In his third claim, petitioner alleges the ineffective assistance of appellate counsel.

 Petitioner first claims that appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of trial counsel claims that he raises in his first claim. Because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002).

 Petitioner next claims that appellate counsel was ineffective for failing to investigate and present newly discovered evidence from a woman named Jodie Laidlaw, who claimed to be Julie Grain's ex-lover. In an affidavit, Laidlaw claimed that she asked Grain, "You killed that man didn't you?", to which Grain replied "Yeah but they'll never prove it."

 Appellate counsel was not ineffective for failing to seek a new trial based on this

allegedly newly discovered evidence because Laidlaw's affidavit did not fully exonerate petitioner of his involvement in this crime, but merely indicated Julie Grain's possible participation in the murder. *See Burton v. Dormire,* 295 F. 3d 839, 845-46 (8th Cir. 2002). In light of the extensive evidence against petitioner, Laidlaw's affidavit would not likely have led to a new trial. Therefore, appellate counsel was not ineffective for failing to present this claim on petitioner's appeal of right.

### C.  **The prosecutorial misconduct claims.**

Petitioner next alleges that he was deprived of a fair trial because of prosecutorial misconduct.

1.  The perjured evidence claim.

Petitioner first contends that the prosecutor knowingly presented perjured evidence from Yvonne Brown, because she testified at petitioner's trial that the driver of the white Ford Thunderbird was a Caucasian male, whereas she had previously testified at Lynn Boyd's trial that she could not positively identify whether the driver was white or black.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269 (1959). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *See Mahaday v. Cason,* 367 F. Supp. 2d 1107, 1114 (E.D. Mich. 2005). Mere inconsistencies in testimony do not establish the knowing use

of false testimony by the prosecutor. *Coe v. Bell,* 161 F. 3d 320, 343 (6th Cir. 1998). The fact that a witness contradicts himself or changes his story also does not establish perjury. *Monroe v. Smith,* 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001).

The record does not support the contention that Brown's trial testimony was false or that the prosecution knew it was false. Accordingly, the trial court's rejection of petitioner's claim was not contrary to Supreme Court decisions on the use of perjured testimony. *Mahaday,* 367 F. Supp. 2d at 1114. Moreover, in light of the extensive evidence against petitioner, Brown's testimony was not material to his conviction.

2. The *Brady* claim.

Petitioner next contends that the prosecutor failed to turn over the police detectives' notes from their custodial interviews with petitioner, claiming that these notes would have helped to establish that his confessions were coerced.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that the failure to turn over these notes violated his due process rights, this claim must also fail. Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the

15

evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Mahaday,* 367 F. Supp. 2d at 1118. Petitioner was present during the police interrogations and would have been aware of any alleged coercion on the detectives' part in attempting to induce a confession. The failure to turn over any police notes concerning the circumstances surrounding petitioner's interrogation would not constitute a *Brady* violation. *See e.g. United States v. McCarter,* 307 F. Supp. 2d 991, 995 (N.D. Ill. 2004)(FBI agent's alleged threat to beat defendant, made directly to defendant immediately before defendant gave statement to police, was not *Brady* material, since such evidence was equally within defendant's possession as that of the government). Petitioner is not entitled to habeas relief on this claim.

### D.  Cumulative errors claim.

Petitioner lastly asks the court to grant him habeas relief based on the cumulative errors that occurred in this case. The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine,* 291 F. 3d at 447. Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error.

### V.  Conclusion

For the reasons stated above, the petition for writ of habeas corpus is **DENIED** and the matter is **DISMISSED.**

**SO ORDERED.**

                          s/Avern Cohn
                          AVERN COHN
                          UNITED STATES DISTRICT JUDGE

Dated: June 5, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 5, 2006, by electronic and/or ordinary mail.

                          s/Julie Owens
                          Case Manager
                          (313) 234-5160